IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SUNSHINE H. HAUANIO, | Civil No. 23-00354 MWJS-RT |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| vs. | |
| THE MICHAELS ORGANIZATION, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiff Sunshine H. Hauanio filed suit in August 2023.  The Court dismissed her initial complaint, as well as a First Amended Complaint, because neither adequately stated a claim for relief.  On each occasion, the dismissal was with leave to amend.  Hauanio has now filed a Second Amended Complaint, or "SAC," and Defendant The Michaels Organization (TMO) moves for its dismissal as well.  This time, TMO argues, the complaint should be dismissed without leave to amend, not only because it fails to state a claim despite prior guidance from this Court, but also because it was filed a day late.  The Court elects to decide the motion without a hearing pursuant to Local Rule 7.1(c).

There is no dispute that the SAC was untimely.  But it was untimely by just a single day, Hauanio is proceeding pro se, and she has offered explanations for

that one-day delay.  Under these circumstances, the Court exercises its discretion to allow the SAC to be considered on its merits, though it cautions Hauanio that she must comply with all procedural rules and that the Court may reject future untimely filings.

Turning to the merits, the Court concludes that the SAC nonetheless should be dismissed.  While the SAC shows vast improvement from Hauanio's prior complaints, even liberally construed, it still fails to provide enough factual matter to support a plausible claim for relief.  TMO's motion to dismiss is therefore GRANTED to the extent it seeks dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

That leaves the question of whether Hauanio should once again be given leave to amend.  The Ninth Circuit has instructed district courts to grant such leave liberally, particularly in cases involving pro se litigants.  *See, e.g.*, *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).  But TMO is correct that, by this point, Hauanio has been given substantial guidance and multiple opportunities to address the deficiencies in her pleadings.

For these reasons, the Court concludes that the appropriate course is to defer decision on whether further leave to amend is warranted.  Hauanio is invited to submit a letter explaining what additional facts she would include in a Third

Amended Complaint if she were permitted to file one.[1]  That letter must be filed by September 23, 2024.  TMO is invited, but not required, to respond with a letter of its own by October 7, 2024.  The Court will thereafter assess whether further leave to amend is warranted.

## DISCUSSION

The SAC asserts nine different claims for relief, which rely on six different federal statutes and two state-law theories.  The Court will discuss each in turn.

### A.    Discrimination Based on Religion

Hauanio's first claim for relief is based on Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex, and national origin.  Hauanio alleges that her former employer, TMO, discriminated against her—that is, engaged in disparate treatment—based on her religious beliefs (she states that she is Catholic).[2]  She also alleges that TMO failed to reasonably accommodate her.  The SAC does not allege sufficient facts to support either theory.

---

[1]    This Court's Local Rules ordinarily require a party to submit a redline version of a proposed amended complaint with changes marked.  *See* LR10.4.  Because Hauanio is proceeding pro se, the Court does not require her to do so here.

[2]    In her first claim for relief, Hauanio also mentions discrimination based on disability (she says that she suffers from PTSD and an adjustment disorder).  However, her disability-related claims fall under the Americans with Disabilities Act, not Title VII, and so the Court addresses those allegations separately when it turns to Hauanio's fourth claim for relief, which cites that statute.

1.  To allege a prima facie disparate treatment claim, a plaintiff must allege that (1) they are a member of a protected class; (2) they were qualified for their position; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Here, the SAC alleges that Hauanio is Catholic, a religious belief that is sufficient to qualify her as a member of a protected class.  It alleges that Hauanio was qualified for her position.  And a separate section of the SAC—raising a different claim for relief—alleges that Hauanio was terminated from her employment, which generally counts as an adverse employment action.  But the SAC does not connect that termination to her religious beliefs.  It does not identify any other person outside of Hauanio's protected classification who was similarly situated but treated more favorably.  Nor does it allege any other circumstances that would support an inference of religious discrimination—that is, that she was terminated based on her religious beliefs.

Within its claim for religious discrimination, the SAC alleges that another TMO employee, Kyra Ketchenson—whom Hauanio describes as "Christian"—was not punished for "freely express[ing] her non-belief of COVID" and violating

4

TMO protocols by not wearing a mask.  ECF No. 32, at 180-81.  To the extent Hauanio's complaint is merely that another employee was *not* punished or subjected to an adverse employment action, that is not enough to show that Hauanio herself *was* subjected to an adverse employment action—let alone that Hauanio was subjected to an adverse employment action for discriminatory reasons.  Put differently, Hauanio appears to be contending that Ketchenson was *not* similarly situated—in particular, because she was not abiding by TMO protocols, and eventually engaged in some unspecified workplace "violence"—and that Ketchenson should have been but was not punished for that behavior.  Even accepting these facts as true, they are not sufficient to meet the third or fourth element of disparate treatment.

If, however, Hauanio wishes to seek leave to amend her disparate treatment claim, she should explain what facts she would offer to satisfy the third and fourth elements of her prima facie case.  For example, Hauanio could explain why she believes (if she does believe) that her termination was based on her religious beliefs.  Or she could explain that she *was* punished for not following comparable TMO protocols, which would then possibly make Ketchenson a similarly situated person who was treated more favorably.  If Hauanio proceeds down this route, however, she should also provide factual detail explaining what protocols were at

issue, and why her violations (if any) were similar and no more serious than those that Ketchenson is alleged to have committed.

Hauanio is also cautioned, once again, that it will not suffice to simply offer labels or conclusions. A plaintiff cannot survive a Rule 12(b)(6) motion to dismiss in federal court merely by asserting, in a conclusory fashion, that another employee was similarly situated. She must offer factual details that would, if taken as true, actually prove that conclusion. So, for example, the SAC's allegation that "discrepancies were evident both within the workplace and during an event," ECF No. 32, at PageID.180, is insufficient because it does not detail what discrepancies Hauanio has in mind.

2. As a second, separate theory of religious discrimination, Hauanio argues that TMO violated Title VII of the Civil Rights Act of 1964 by failing to accommodate her. Title VII requires employers to reasonably accommodate the sincerely held religious beliefs of their employees if job requirements conflict with those beliefs. *Groff v. DeJoy*, 600 U.S. 447, 453 (2023). To make out a prima facie case, a plaintiff must show that (1) they had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) they informed their employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected them to an adverse employment action because of their inability to fulfill the job requirement. *Peterson*, 358 F.3d at 606. The SAC does

not satisfy these requirements.  While it does allege that Hauanio has a bona fide religious belief, it nowhere alleges that the belief conflicts with any employment duty.  It does not allege that Hauanio informed her employer of the belief and the conflict.  And it nowhere alleges that Hauanio faced adverse consequences because of an inability to fulfill a job requirement that conflicted with her religious belief.

Once again, if Hauanio wishes to describe how she would make use of further leave to amend, she should provide factual detail that would satisfy the elements of this claim.  Her letter should describe how her religious belief conflicted with a job requirement, how she informed her employer of the same, and what consequences she faced because she did not sacrifice her beliefs to the requirement.  Again, it will not suffice to assert conclusions; Hauanio must describe what actually happened to her, setting out facts that, if believed, would actually prove the conclusion she wishes to establish.

### B.    Discrimination Based on Pregnancy

Hauanio's second claim for relief is based on the Pregnancy Discrimination Act, which was enacted as an amendment to Title VII of the Civil Rights Act of 1964 to "make it clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions."  *AT&T Corp. v. Hulteen*, 556 U.S. 701, 705 (2009) (cleaned up).  To make out a claim under the Pregnancy Discrimination Act, Hauanio must show "that she belongs to the protected class,

7

that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others similar in their ability or inability to work." *Young v. UPS, Inc.*, 575 U.S. 206, 229 (2015) (cleaned up).

The SAC alleges that in 2020, Hauanio was pregnant and requested the "reasonable accommodation to work from home temporarily during the COVID pandemic," but that TMO property manager, Tammy Ichokwan, and TMO regional property manager, Brandon Hegland, denied the request.  ECF No. 32, at PageID.181.  But while Hauanio's request was denied, "the corporate offices had been operating from home and alternating staff into the office." *Id.*  And because her request was denied, Hauanio was instead forced to "take a personal leave of absence" during that time.  *Id.*  Further demonstrating the discriminatory motive of these actions, the SAC alleges that when Hauanio returned "from the personal leave of absence for the birth of [her] baby, TMO property manager, Tammy Ichokwan made the inappropriate comment, 'NO! No, more babies! I need you in the office.  You were away too long.'" *Id.*

While concerning, these allegations fall short of stating a claim for relief. As TMO points out in its motion to dismiss, the SAC does not allege whether Hauanio would have been able to perform the duties of her employment from home.  And while the SAC alleges that the "corporate offices" had been allowing

staff to work from home, it does not allege that these corporate employees were similar to Hauanio in their ability or inability to perform their jobs from home.

If Hauanio chooses to submit a letter to address these deficiencies, she should explain what additional facts would support her claim. In particular, she must explain what her work duties were in the relevant time period, and whether and to what extent she would have been able to perform those job duties from home. She must then explain what work duties belonged to the corporate staff, and whether and to what extent they would have been able to perform their duties from home. To state a claim for relief, these new facts must show that the corporate staff (or any other employees who were allowed to work from home) were similar to Hauanio in their ability or inability to perform their work from home. If Hauanio cannot provide facts to this effect, then her Pregnancy Discrimination Act claim cannot go forward.

## C. Retaliation

Hauanio's third claim for relief alleges retaliation under both Title VII and the Americans with Disabilities Act (ADA). To make out a retaliation claim, Hauanio must allege that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a "causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha*

*Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002); *see also Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004) (similar).

The SAC does not meet these elements. To begin with, the SAC does not adequately allege any protected activity. It alleges no activity protected by the ADA. And while it alleges under Title VII that Hauanio reported the sexual harassment of a colleague by another employee, ECF No. 32, at PageID.182, the SAC does not allege how or to whom Hauanio reported this misconduct.[3]

The SAC also fails to adequately allege an adverse action that would support Hauanio's retaliation claim. As noted, elsewhere (in her fourth claim, discussed below) Hauanio notes that she eventually was terminated from TMO, but she nowhere alleges—or offers any facts that would support the conclusion—that her termination was because of protected activity. Similarly, the SAC alleges that TMO manager, Tammy Ichokwan, promised Hauanio a promotion that never materialized—but it does not suggest that the failure to promote was retaliatory.

The SAC further alleges that after the report of misconduct, Hauanio "experienced a hostile work environment." *Id.* at PageID.181. But it does not

---

[3]     The SAC further alleges that at some point after Hauanio reported the sexual harassment, she joined a virtual meeting in which TMO employees made derogatory comments about, and discussed the firing of, the employee who had been sexually harassed. Although these allegations are troubling—and possibly could, if fleshed out, support a claim brought by that fired employee—they do not show that an adverse employment action was taken against Hauanio, let alone one in response to her protected activity.

10

provide sufficient factual detail to support that conclusion.  The SAC alleges that Hauanio faced "excessive micromanagement" including "relentless and repetitive calls lasting 30 minutes to 3 hours, every 15-30 minutes, with no urgent relevance to the company's operations."  *Id.* at PageID.181-82.  Whether management constitutes "micromanagement," let alone "excessive," however, depends on the facts.  And while the SAC asserts that these calls bore "no urgent relevance" to Hauanio's work, the SAC does not support that conclusory assertion with factual detail, such as by explaining what the calls were about.

Finally, the SAC does not allege any facts that would show a causal relationship between reports of office misconduct and the "micromanagement" of which Hauanio complains.  It is not enough for the SAC to assert the conclusion that the "micromanagement" was "[i]n response" to the report.  *Id.* at PageID.181. To adequately allege this element, the SAC must allege facts that, taken as true, provide a basis for finding a causal relationship.  Circumstantial evidence may be sufficient, such as an employer's knowledge that the plaintiff engaged in a protected activity, and proximity in time between a protected activity and the alleged adverse action.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). And so Hauanio could, for example, allege facts showing closeness in time between Hauanio's report and her supervisor's actions.  But the SAC does not state

when the "excessive" calls occurred, and so, even if the first two elements of retaliation were met, the Court cannot infer causation here.

> **D.   Disability Discrimination**

Hauanio's fourth and sixth claims for relief are based on the ADA, the Occupational Safety and Health Act (OSHA), and the Family and Medical Leave Act (FMLA), and they allege that TMO failed to provide reasonable accommodations and engaged in discriminatory treatment related to Hauanio's disability.

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to" certain employment actions. 42 U.S.C. § 12112(a). Discrimination under the ADA can include failing to provide reasonable accommodations to an employee or terminating an employee on the basis of their disability. *Id.* § 12112(a), (b)(5)(A).

Hauanio's allegation is that in February or March of 2021, she contacted TMO's property manager, Tammy Ichokwan, to file a workers' compensation claim, and that TMO staff was aware of Hauanio's PTSD, stress injury, and adjustment disorder with mixed disturbances or emotions and conduct. ECF No. 32, at PageID.183. And while undergoing treatment, TMO "unfairly terminated" Hauanio in March 2021, without any offer of reasonable accommodations. *Id.*

12

The SAC does not adequately allege an ADA claim.  To begin with, it does not allege that, in the specific time period when Hauanio was receiving treatment for her disabilities, she was a "qualified individual" under the ADA—that is, that she could perform the essential functions of her employment with or without reasonable accommodations.  42 U.S.C. § 12111(8).  The SAC alleges that Hauanio was not offered reasonable accommodations, but it fails to offer any facts that would support the conclusion that reasonable accommodations existed that would have made it possible for Hauanio, in that time period, to meet her job requirements.  And because the SAC does not adequately allege that Hauanio was qualified for her position, it similarly fails to adequately allege that she was terminated because of her disability (as opposed to because she was no longer qualified for her position).

For these reasons, the SAC fails to state an ADA claim.  And although the SAC also cites OSHA and the FMLA, it does not adequately state a claim under those statutes either.  For starters, it is well established that OSHA does not create a private cause of action.  *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994).  Hauanio therefore cannot pursue a claim under OSHA.  Moreover, unlike the ADA, the FMLA does not protect against disability discrimination generally.  Rather, it protects the right of an employee to take "reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or

parent who has a serious health condition," as well as the right to return to a job after taking that protected leave.  29 U.S.C. § 2601(b).  *See generally Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011).  And although the SAC alleges that Hauanio was terminated while undergoing medical treatment, it offers inadequate enhancement of those facts—such as whether she was indeed on leave during the entirety of the treatment—to support a claim under that statute.[4]

### E.    Sexual Harassment

The SAC's fifth claim for relief alleges that she was subjected to sexual harassment at TMO that amounted to a hostile work environment.  To establish a prima facie claim of a hostile work environment under Title VII, a plaintiff must allege that "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (cleaned up).

The SAC's factual allegations indicate that it was another TMO employee, not Hauanio, who was subjected to the alleged sexual harassment.  *See* ECF No.

---

[4]    The SAC further alleges that TMO is also Hauanio's landlord, and that it has treated her wrongfully in that context as well.  Although those allegations appear within the disability discrimination section, they appear to be directed toward the Fair Housing Act, and the Court will take them up when it addresses that claim below.

32, at PageID.183; *see also supra* note 3 and accompanying text.  It does not provide any factual detail to show that Hauanio herself was subjected to verbal or physical conduct of a sexual nature that was unwelcome and that was sufficiently severe or pervasive to alter the conditions of her employment.  Accordingly, the SAC does not state a sexual harassment claim.

### F.    Housing Discrimination

In her seventh claim for relief, Hauanio broadly alleges that TMO, acting as her landlord, discriminated against her "in housing matters" based on her religion, disability, and with retaliatory motive, all in violation of the Fair Housing Act (the FHA).  ECF No. 32, at PageID.186.

Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  It is also unlawful to retaliate against an individual who has engaged in activity protected by the FHA. *Id.* § 3617.

The SAC does not make out any claim under the FHA.  Its only housing-related factual allegations are that two towing stickers were placed on her vehicle, whereas a single sticker was placed on others' vehicles.  ECF No. 32, at PageID.183.  The SAC does not provide enough facts to determine whether these

actions were improper, let alone that they were discriminatory or the result of retaliatory motives.

**G.     State-Law Claims**

Hauanio's eighth and ninth claims for relief are based on state law.  She alleges that TMO "negligently failed to provide a safe and harassment-free work environment" and that its "intentional actions, including sexual harassment, retaliation, failure to accommodate, discrimination, and hostile housing environment" were "extreme and outrageous" and caused her severe emotional distress.  *Id.* at PageID.187.

These state-law claims are founded upon the allegations that Hauanio elsewhere makes in support of her federal-law claims; Hauanio does not offer any separate or independent factual basis for her state-law claims.  And because the federal-law claims must be dismissed for failure to offer sufficient facts to substantiate them, as discussed above, it follows that these state-law claims must be dismissed as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS TMO's motion to dismiss to the extent that it seeks dismissal for failure to state a claim under Rule 12(b)(6). The Court defers decision, at this time, on the question of whether Hauanio should be granted further leave to amend.  If Hauanio wishes to continue pursuing this

action, she must submit a letter to the Court seeking leave to amend by no later than September 23, 2024.  TMO is invited, but not required, to respond by filing a letter of its own by October 7, 2024.

In any such letter, Hauanio should do the following things:

(1)     Identify the claims she still wishes to pursue.

(2)     Supplement her factual allegations to address the deficiencies that have been identified in this Order.  Hauanio should clearly and thoroughly describe the facts that support her claims for relief, and not rely on merely conclusory assertions.

Hauanio is cautioned that if her letter fails to address the deficiencies identified in this Order, her action may be dismissed without leave to amend. Moreover, if Hauanio does not file a letter requesting leave to amend by September 23, 2024, this case will be automatically dismissed.

IT IS SO ORDERED.

DATED:  August 23, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 23-00354 MWJS-RT, *Sunshine H. Hauanio v. The Michaels Organization*; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS